The Court of Appeals, we have two cases to be submitted today on oral argument. We begin with Grand Famous Shipping Ltd. v. China Navigation Company. Mr. Tillery, may it please the Court, good morning. I represent TPC, TPC Subrogate and Underwriters, the owner of the dock that was struck by the Yo Chow vessel. I'll call myself TPC if that's okay with the Court. Simply put, Your Honors, I'm trying to figure out what to say that's not in my briefs and there's not much more to say, so I will cut to the chase. Yo Chow was a big ship, Yo Chow was coming down the Euston Ship Channel and Yo Chow struck another ship at my client's dock and that ship was pushed into the dock and it's a dock damage case. It's nothing unusual about that in terms of a maritime case. The Yo Chow itself was time chartered by a company called China Navigation. The owner was Grand Famous, they called the technical manager running the ship was a company called Baikun. So there are three players, there's China Navigation, the time charterer, there's Grand Famous, the owner, there's Baikun, the technical manager. Really when you get down to this case, it's two primary issues I'd like to talk about. One, the idea of improper vetting, negligent hiring by the time charterer, that's issue number one. And number two, alternatively, the evidence would establish a genuine issue of material fact that the time charterer was essentially the de facto owner of the Yo Chow and therefore is responsible as if it were the owner. I accept and I understand the basic principle, Your Honors, that customarily a time charterer is not liable. China Navigation is customarily not liable for the negligent acts of an owner-operator. And as Judge Ellison said, Judge Ellison said that whether a time charterer has a duty to vet the owner of a vessel that it time charters is a question of first impression in the Fifth Circuit. I accept that principle but I'd like to add to that. Maybe it's a question of first impression as to the relationship between a time charterer and an owner. But it is certainly not first impression as a matter of general tort common law principles around the country and around the world. Because the basic principle and the basic rule that is established in the restatement of torts as guided, as applied in maritime cases universally, is that a principle like China Navigation has an absolute obligation to hire a competent contractor to do its job. It's the standard principle independent contractor rule and that rule provides that the principal has to hire a competent contractor and that principal can be independently— But if I rent a car from Hertz and then I crash into someone, is Hertz liable? If you rent a car from Hertz—I'm sorry, I couldn't— If I rent a car from Hertz and then crash into someone, is Hertz liable for that? Good question. No. The question is, does Hertz have an obligation to vet you, I guess is where you're coming from. Then they have to look at my driver's license. Okay, I showed it here. We have that. I would suggest to Your Honor that's a completely different situation where you are renting the car from Hertz and you're driving the car for Hertz. In this situation, the time charter is renting, leasing, so to speak, this vessel and putting its own equipment on the vessel, putting its own product on the vessel, and ordering that vessel to deliver this for them to another location. In addition, it's a $20 million ship with a crew of 25 people that can kill things. So the standard I would suggest, Your Honor, is a little bit higher and a little bit different. Are you contending or not that China Navigation was controlling the operation of the vessel? No, I'm not saying within that sphere of duties that the time charter is responsible for. No, I'm not arguing that they were directly controlling the navigation of the ship. No, sir. I'm not. I'm just saying that before this contract was even entered into, that China Navigation had and we should impose a duty upon them to do some sort of reasonable due diligence. And our experts have so testified and given expert opinion that it is custom in the industry for the time charterer to do a vetting of two important things on the owner. Vetting the financial stability and vetting the safety management program. If I could tell you why that's so important from a custom standpoint. It's not just vetting financial stability. I want to see if they're a good company and financially stable. It is vetting the financial stability of the company to determine whether that company is competent and qualified and has enough capital to do the job at hand. Do you have enough money, enough capital, so you can hire the people to safely do the job? Our experts have said absolutely not. These companies, if you look at it, your honors, China Navigation hired a company, Grand Famous, with no employees, zero money in the bank, and one unpaid manager. So they hired a defunct, they hired a shell company. This is what they did. I use the word sham and that's maybe a little hyperbole, but that's essentially what they did. What about the fact that China Classification Society audited Yochelles, or however you say it, safety management system, and certified that it was ISM compliant. What about that reality? That reality, your honor, is just like when the Coast Guard goes on to a vessel that your honor is familiar with and issues, I think they call it a certificate of inspection. That Coast Guard manager looks around the vessel, gives you a certificate of inspection, and walks off. That doesn't mean that they went through in detail each particular point of the safety management system, and I'll explain that a little further. Our experts, who have not been objected to, have not been discredited, have said that's custom in the industry, not only to vet the financial stability, but to look through the safety management system of the time charter, the owner, and or the operator. But that's what they audited. I'm sorry? I thought that was what they audited. The argument, and I understand the argument, the argument is, well, they got from the Chinese government a certificate that says, we looked at your SMS and it's fine. My experts have said, and if you look at it, most favorable to me, because I lost this under judgment, my experts have said, that's not enough. You can't just get a certificate of inspection like you do on a Coast Guard vessel. You can't just get a break tag. A break tag doesn't mean everything is perfect on your car. Our experts have said, that's not enough pursuant to the custom in the industry. So the reason I asked the Hertz question, which I realize is different from the facts here, was just your notion that you are always liable to the innocent. So that would make Hertz liable to the innocent person I crashed, as opposed to they wouldn't have to pay for me. And so that's my question here. So how do you connect the notion that there is always a duty to the innocent party in every situation? Because that really seems to be your argument. So tell me what case says that and how you connect that here. Sure. I think that if you look through every case cited in all of our briefs, you could cherry pick language that says, the principal has an obligation to do hire a competent contractor. That's in every one of these cases. I think you could find that language. There's a duty in every case. How elevated is the duty? It's different in your Hertz situation, Your Honor, because at that point, you're getting in the car and you're driving the car, you by yourself, for your own personal use. If Hertz had moved, maybe Hertz had moved its own goods and had hired a huge truck to deliver the Hertz's own huge cement blocks and they hired a commercial company to do that for them, Hertz might have an obligation, an elevated obligation, to make sure that that company can move those cement blocks for Hertz safely because if that cement truck hits a third party, Hertz could be liable for that. And that's what our experts are saying here in this case. Okay, what's your case on that? The Dan Ocean case has a bunch of language in it. There's a case that starts with a J that's in our brief. It's an 11th Circuit case. I don't have the copy right here. And in every case, numerous cases cited in the Dan Ocean case talk about negligent hiring. It goes back to the simple principle. Another example would be this. Building a big skyscraper. If the real estate developer is building a huge skyscraper and he hires a bunch of contractors to do the work, we as a society would expect that real estate developer to do some sort of due diligence on the contractor doing the work to make sure that he's built skyscrapers in the past, to make sure that he's financially stable, to make sure he has a safety program. And in this case, our experts say that they didn't have a safety program. And that's what caused the accident. The cause of this accident was undisputed fatigue of the man behind the wheel, behind the sticks, the helmsman. He went left instead of right because he had been up for nine hours, he slept for two hours, and then he went back to work. And it's undisputed the accident was caused by fatigue. It's custom in the industry for these companies to have what's called fatigue management programs. The biggest maritime collision causer is fatigue. And there are articles that discuss that. What are you saying? Or did they have some sort of requirement that you can only work X number of hours for a shift? Yes, they did not. And they just violated that? They did not, Your Honor. They did not. And it's interesting because our experts have said that had they had a fatigue management program in place, and I'm talking about Baikun and Grand Famous, had they had a fatigue management program in place where they work rest hours or discussed how many hours you can work and all of that kind of stuff, if they had a good one in place, it would have been implemented. This accident would not have happened. Interesting thing enough about this is China Navigation had a robust China Navigation of their own. For their own vessels, they had a robust fatigue management program. But Baikun and Grand Famous had almost nothing. They had like one little paragraph if you read it in our briefs. So I would suggest to the court, are you creating a duty? Maybe a little bit. But I think the duty is based on facts and law. And in a situation like this, when you have a summary judgment granted and experts who say it's custom in the industry for all of these reasons, it's not just because it's custom in the industry. But duty is a question of law. Understood. But duty is created, Your Honor, by the circumstances surrounding that legal duty that you've been created. I don't think in a vacuum the court should say, there's just no duty. You can hire whatever contractor you wanted. I could hire anybody. No, they have to have the certificate. Kind of like I have to have a driver's license to rent a car. But they don't have to investigate whether I'm a good driver. Except if you were moving big cement blocks from here to Florida in a huge 18-wheeler for Hertz, and Hertz wanted you to do that, I would suggest to the court they need to look at more than just your driver's license at that point. If you're doing that for Hertz. I mean, they need to check that. But why is it that if you're hiring a professional to do something for you,  I think because, number one, the experts say it's custom in this particular industry. That's number one. Custom is a big, big factor in terms of looking at whether somebody is negligent. And that's what they should have done as a matter of safety in this instance. Your question is well directly pointed. And I understand it. But this is not Hertz. Rent a car where you'd show your driver's license. No, I mean, I'm understanding that. But it just, there seems to be, I mean, I understand your argument is in this case for this situation. But I'm just wondering how far it takes us. Does it mean that when Pizza Hut uses DoorDash, they're liable for any DoorDash crash? I mean, I'm just trying to understand how far this goes. I understand. Again, I take it depending upon if Pizza Hut is putting like in an 18-wheeler, DoorDash is putting in an 18-wheeler a thousand pizzas to be delivered, you know, across the country in an 18-wheeler, you might expect a little bit more due diligence. And the case is if you look at principle. So what is the line crossing? Because it seems like you're saying if they're just delivering one pizza to my house by DoorDash, they're not liable. But if they're delivering a thousand pizzas to my friend in California, then that, they are liable. So tell me what, what is the line that we have that you cross here? The legal duty would have to be based upon the, I guess, let me think of it, the level of sophistication and what is being required for the driver of the boat to do. And if the driver is doing something that requires a specialized, elevated specialized need, there ought to be a duty. And the volume of cases cited on principle independent contractor is what I would ask the court to look at. Because this is what this is. This is a principle independent contractor situation and there are a plethora of cases. 411 of the restatement says, you have an obligation to make sure you hire a competent contractor to do your job. The duty is built on the, I would say sophistication is the best answer. I can give you on that. I have a minute left, I think. Your Honors. You have a minute. Do I have a minute left? You do. Okay. You don't have to use it. It's up to you. Thank you, Judge. De facto ownership. If I lose on this issue, if I lose on this issue, our second argument is the facts are so convoluted here that there's got to be a genuine issue in fact as to whether China Navigation was the de facto owner. Long term charter, China Navigation entered into this agreement before the vessel was built. Two years before the vessel was built. The reason China Navigation did that is because the bank wouldn't lend money for the vessel to be built without China Navigation signing a contract so they would know about future income. Right? China Navigation built this boat. Your Honors. This is China Navigation's boat. They really built it. And this is a China Navigation setup situation. They hired Grand Famous with no office, no employees, no shareholders, nobody that we knew about, and an unpaid manager. They renamed the vessel. They renamed the vessel and put their whole logo, the SWIR logo, which is the big company for China. They put the SWIR logo all over the vessel. You couldn't do that, I don't think, on an Uber, Judge, or on a Pizza Hut driver. All right. Your initial time has expired and you've saved time for rebuttal. Thank you, Judge. Mr. Franco? Good morning, Your Honors. May it please the Court. Before I get into my arguments, I would like to point out to the Court that what TPC is requesting this Court to do is impose a new, shapeless, and free-floating tort duty on time charters who charter vessels on what is known as a New York Produce Exchange Agreement. The most common form to do this, and that duty would be to vet vessels, whatever that means, and to vet these chartered vessels, and that the time charters would owe this duty to the world at large. TPC's position is fundamentally incorrect based on Fifth Circuit precedent and would be untenable for the industry and the position would disrupt hundreds of years of commercial maritime operations with respect to time-chartering vessels. I think you're going to turn, if you do what he's asking, you're going to turn the industry on its head. What's your response to the allegation that the Grand Famous and Beacom were set up as shell companies to protect and insulate China Navigation? Okay, here we go again. That's my response. That's wholly false, untrue, and there's no evidence of that whatsoever. China Navigation is part of the Swire Group of companies. It's a major company. It's a legitimate company. It operates many vessels. It time charters in other vessels such as the Youqiao. It has no relationship to Beacom or Grand Famous whatsoever aside from these charter parties. I don't know. There's no evidence of this. We have a declaration on file. It has not been rebutted. He has a conspiracy theorist that's his expert, and he's trying to get this bizarre. He's trying to convert. He's trying to create facts out of whole cloth. There's no evidence whatsoever linking China Navigation to Beacom or Grand Famous aside from the charter arrangement. So I will continue. So why is this an issue? Many time charters are simply commercial operators, okay? They have no technical expertise with respect to operating vessels. Say you want to charter a fishing vessel to go on a trip with your family. Are you going to then say, Oh, let me review your procedures and protocols. Let me vet your ship. Let me make sure the work rest hours are complied with. That's ridiculous. And that is why time charters enter into these charter parties in the first instance. What he's doing is he's conflating two types of charter parties. He's trying to convert time, trying to convert China Navigation into what is known as a demise charter. And you note that in his brief, he avoids all of the precedent on this. He avoids talking about this. He avoids talking about the spheres of responsibility. And if he gets his way, the roles of a time charter and demise charter would be conflated. Moreover, the international industry will be substantially impacted and the U.S., at least the Fifth Circuit, will be the outlier in its approach. In this regard, I refer the court to a declaration of solicitor John Simpson. We refer to that in our brief and he's an English solicitor and he says under English law, under these facts, a time charter would have no liability. What he's asking for would essentially convert a time charter into a demise charter and that's untenable. Who would time charter a vessel if you have all these responsibilities to vet? And what does that even mean to vet? I still don't know. Okay, so how do you address the notion of duty to the innocent? Even if you and I work out a deal and I don't have a duty to you, does that change the fact that I might have a duty to an innocent? Well, time charters could have duties to innocents and that's in all the case law, including Hogdon, but the duty has to arise out of the spheres of responsibility. Here, this is an NYPE Charter Party form. The NYPE form, the most commonly used form, specifically states that this is not a demise charter. It specifically states that owners, owners, grand famous, are responsible for the navigation of the vessel. So our sphere of responsibility was not to navigate the vessel at all. It's very clear. Unlike in the Dan Bunker case where it was an oral charter party and the court was uncertain of the terms and that's why it denied the summary judgment. But in our case, it's pretty much straightforward. And you can look at Hogdon and all the other cases talking about that. And whether or not the duty arises before the charter party's entered into or after, it doesn't matter. That duty could only arise from what we're promising to do under the charter party. We're not accepting, we as time charters, as innocent time charters, are not accepting responsibility and we're not responsible for navigating the vessel. And by the way, navigating the vessel would include not only working on the bridge, steering the ship, but it also includes all the procedures, the safety management system, what we call the SMS. And that would address work rest hours and fatigue. And this is another interesting... Mr. Tillery says it's undisputed that the accident was caused by fatigue. Is that... I don't think that's been confirmed or I don't think that's proven. Is that still disputed? I would say it is, yeah. I mean the accident, the guy, the person said, turn the wheel to the right, the helmsman turned the wheel to the left. It hasn't been established that he did that because he was fatigued. Did they speak the same language? No. I mean they all speak English on the bridge, but you have to, I believe you have to speak English to be a mariner, but the pilot is a U.S. citizen and I believe the helmsman was from Myanmar. I'm not positive. He would know port and starboard, wouldn't he? Yeah, well he was nervous or whatever. He made a mistake. But why would a time charterer who's not navigating the vessel have any life? That's exactly right. Why would we, who entered into a commercial transaction with someone, to use part of their, to use the full reach of the vessel for cargo purposes, be actually responsible for whether or not someone on that bridge or that vessel makes a mistake. That's purely navigation. That's purely the role of Grand Famous. Grand Famous delegated that role to Baikun, who's known as the technical manager or the ISM manager of the vessel. It's Baikun that's responsible under the International Safety Management Code for developing the procedures, for developing the SMS. That SMS was approved by the flag state, Hong Kong. Hong Kong is the fifth... Excuse me. Has your client ever declined a time charterer because they didn't have adequate safety protocols? I don't know the answer to that, but I would say this charter party required... I don't think my client would look at their safety protocols. It would look at does this vessel meet class? Does this vessel have its certificates? And this vessel in fact had its certificates. It had its document of compliance. The company did, Baikun. And then it had its safety management certificate approved by the... that approved by Class NK on behalf of the flag state. And Hong Kong's the fifth... I think the fifth most ships are flagged in Hong Kong. So it's a major flag state. And Class NK is a major classification society. So... There's no case law or secondary maritime sources supporting his opinion. And you know why? Because it's made out of whole cloth, his view. There's no case law on this point. There are no horn books. I went through the horn books. I went through all the books on charter parties looking for this mysterious duty. Haven't found anything. The reason is because there is none. And what he's doing is trying to use a self-serving expert to somehow sneak this expert in, defeat a summary judgment when you don't even get to that issue because a question of duty is a question of law. He's trying to sneak that in with his self-serving expert who's gonna contradict my expert and get to trial on this. And what's really, really sad would be is if this court allows him to get his way, Grant Famous and Bakun limited their liability under the Shipowners Limitation of Liability Act. They're allowed to limit their liability to the value of the vessel after the collision. He's trying to break that limitation, okay? But they have a statutory right to limit liability. It's a sacred right of the shipowner to do that. Well, interestingly enough, if this court imposes a duty on time charters under NYPE contracts, a time charter could be more liable than the actual owner because a time charter is not allowed to limit its duty under the Shipowners Limitation of Liability Act. That's another reason why this position makes absolutely no sense. That is bogus. And I can cite what, if you want me to get it, I'll get into that right now. Hold on. But basically, the trial court judge got it right. There's absolutely no evidence of de facto ownership. In order to have de facto ownership, you have to have practical control over the vessel. Well, what practical control did we have? We did not direct the navigation of the Yochow. We did not hire her crew. We had no personnel aboard the vessel. The vessel was owned and managed by Grand Famous and Bakun under the Ship Management Agreement. And then the fact that we renamed the vessel doesn't matter. A lot of time charters are permitted. It's like renting an airplane or something. You're allowed to put your name on there. You're allowed to put your flag on there for commercial purposes, and that's in the charter party, but that's purely commercial. We do not have operational control over the vessel simply because our flag or our symbol is painted on the stack of the vessel. And then this whole bogus listing of us as the manager in the Lloyd's Register. The Lloyd's Register got it wrong, listed us as the manager. That's immaterial. A third party cannot change our legal status because in a book they put us as something that we're not. It was just a mistake they made which was subsequently corrected. We're not the de facto owner, and I trust that if you look at the declaration of Rob Aravold, you can easily see that. How long was the time charter for? How many years? Excuse me? How many years was the time charter for? I think it was five plus. I'm not positive. But what's interesting is at the time the time charter party was entered into, the ship was still being built, so there were no procedures in place. There was no SMS. What are we supposed to vet? Another strange, another issue which makes no sense to me. There was nothing to vet because at the time the ship's being built, Grand Famous had not yet engaged Bakun to manage the vessel. It's Bakun that develops the safety management system. Now, I wanted to just talk about some facts that could help the court. It's our view that this elision arose out of a pure navigational error committed by the helmsman. He went the wrong way. After being directed to go hard to starboard, he was directed to go hard to starboard, but instead he went hard to port resulting in the elision. So it's a purely navigational error. At all times, we were an intermediary time charter. So we time chartered the vessel from Grand Famous. We sub-chartered it to a company called Daiichi. Well, this is very important too. So we sub-chartered it to Daiichi. Is Daiichi also responsible or are now all sub-charters responsible? I mean, it's going to be the Lawyers Employment Act if this court asks for what he's asked or grants or creates a new duty. And it was Daiichi that directed the vessel to Houston, not my client. So Daiichi, through the sub-charter chain, had control over directing where the vessel was able to travel to and they directed the vessel to travel to Houston. And the key is that the time charter party between Grand Famous as owner and China Navigation Company as time charter, again, it's on the New York Produce Exchange form, the most widely used form. And under that agreement, both China Navigation Company and Grand Famous had distinct duties. And Clause 25 is the key clause here and that says, again, that this charter is not a demise and that Grand Famous was responsible for the navigation of the vessel. And this is key because under a demise charter, which is akin to renting a vessel, it would be the charterer that would be responsible for the seaworthiness of the vessel, the crewing, and her navigation. It would be the charterer that would be charged with developing the safety management system. But we did not enter into a demise charter. That's why the form says this is not a demise. When they wrote the form in 1913, they knew that. Those words have meaning. And then another very important clause  which is a rider clause. And under that clause, it says it's the sole responsibility of Grand Famous as owner to comply with the ISM Code. So it's the sole responsibility of Grand Famous as owner to develop the safety management system, to do all of that. And since that wasn't in our sphere of responsibility, how could we have a duty to vet? Because if you look at existing Fifth Circuit precedent about liability of charterers, and I cited, I have a string cite in my brief that talks about all the different situations where a time charterer has been liable to third parties. In order for liability to exist, it has to arise out of a sphere of responsibility. And what informs that is the terms and conditions of the charter party. Even though the tort duty may be owed to a third party, it's a tort duty that's owed to a third party. It's the terms and conditions of the charter party that informs what that duty is. And here the charter party says, we're not responsible for navigation, we're not responsible for developing the procedures, so why would we have a duty to so-called vet the vessel? It makes no sense. And by the way, the vessel was already vetted by the class society and approved by Hong Kong and had all certificates. And so the ISM Code is very important because under the code it says that it's the owner, Grand Famous' duty to develop the safety management system and that would address all navigational procedures including bridge procedures and work rest hours. So when we use the word navigation, navigation just doesn't mean steering the vessel. It means all the procedures necessary to navigate the vessel on the waters. So that would include having a fit and competent crew. It would include crewing the vessel. It would include work rest hours. And Grand Famous delegated its duty to comply with the ISM Code under what is known as the Ship Management Agreement and that specifically states that Bakun was to technically operate the vessel including establishing, implementing, and managing that safety management system. So it was Bakun's role and Grand Famous' role to implement the safety management system. So CNC has absolutely no duty to vet the vessel for its navigational procedures including work rest hours or to vet Grand Famous or Bakun regarding their procedures or financial status. Notwithstanding, CNCO was aware the vessel was always in class and that the vessel and Bakun held the appropriate certificates, the safety management certificate and the document of compliance signed by the classification on behalf of the flag state Hong Kong reflecting compliance with the International Safety Management Code. Here, no evidence has been adduced that China Navigation Company was negligent in performing its traditional duties as a time charterer and those duties, again, stem from its spheres of responsibility. Thus, the grant of summary judgment in favor of China Navigation was proper. The Hogden case and many other cases are clear that a time charterer only has tort liability to third parties for activities that are within the spheres of responsibility such as designating the route, mission, and cargo and the timing of the assignment. None of these activities were the cause of this elision. The elision was due to a navigational error. Further, as enunciated by the Fifth Circuit in Moore v. Phillips Petroleum, the owner within a time charter party remains responsible for the seaworthiness of the vessel, navigational errors, and negligence by the crew. That's Fifth Circuit law. The owner remains responsible for navigation. Okay, simply put, if China Navigation had no operational control of the vessel, it would not be responsible for navigating the vessel and it would not be vested with developing and implementing the safety management system. And from there, it flows that it could not be responsible for vetting for those very items. Including the financial financial wherewithal of Bakun. Thank you. Thank you, Mr. Branca. Mr. Tillery, you've saved some time for a vote. Your Honors, we are not arguing sphere of control. We are not arguing the contract. We are arguing, I wrote down what my opponent said. Our duty, is what he said, China Navigation's duty can only arise out of what is contained in the charter part. That's just wrong. The sphere of control and those sphere of duties is something they can be responsible for, but the case law also says they can be responsible for independent negligence. And that's a separate argument. That's a separate claim that we're making. The sphere of control and the contract, you cannot contract away your obligation to third parties. Yeah, but independent negligence requires a duty and that swirls us back to this notion of where is the duty. Fair. And I would suggest, Your Honor, if you don't create some kind of duty, maybe I'm framing it wrong, it shouldn't be duty to vet. How about duty to do something as a principle to make sure that you hire a competent contractor. Well, they did something. They checked the certificates. I... You think that's not enough. So the question is, what is? And I suggest, Your Honor, that's at very least a fact question based upon the unreverted expert testimony that's all throughout the record. Yeah, but a fact question on what the duty is. Well, the creation of the duty ought... It's a question of law. Violation of the duty is a fact question. Understood. I would suggest, Your Honor, but the creation of the duty, I understand the court and the law has to create it. The creation of the duty needs to be based on policy, okay, and policy, Your Honor, would dictate looking to custom. It seems fair that if the policy of this community ought to be you can't just hire anybody to do something so sophisticated, that policy ought to be what is the custom. We're not a common law... Well, I guess in admiralty we sort of are a common law court, but... And so that, I think, Judge... But we can, we have the power to create a duty in your view? Absolutely. In admiralty? Absolutely. Because we don't generally. Yes, Your Honor, you do. The court has the power to create a duty in this situation based upon custom in the industry and I would suggest that the court do that and maybe we didn't violate it. I mean, maybe China Navigation wins on the facts, but certainly they had an obligation to do something principled independent contractor. If I'd like to run back since I have a minute to the second argument which is de facto ownership that Your Honor mentioned. I was going through the list when I lost my time. Let me write three more quick points on why this is essentially a China Navigation vessel. Not only long term charter, not only they hired a sham company, all of the things   rename the You Chao and put their flag on it and stack it and repaint it, but they advertised it as a China Navigation vessel and it was a China Navigation vessel and they advertised the You Chao. China Navigation advertised the You Chao as part of its fleet. Secondly, he talks about the Lloyd's Register. In the Lloyd's Register, I was a young lawyer and my partners would tell me, we'd have a collision and they'd say, go find out who's the boss of that boat. Go up in those blue books in the library and go find out who the boss of the boat is. Well, in the Lloyd's Register for the time of this accident and four years before, the boss of the boat was China Navigation. They were listed as the manager and it wasn't just some third party. As he said, Lloyd's Register gets that information who's the boss of the boat from China Navigation. They give them that information. Did they make a mistake? I don't know, but they listed themselves as the boss of the boat. In addition, the next point is, China Navigation through its parent company, SWIR, required the You Chao to download some sort of navigational equipment onto the vessel so that they could keep track of the vessel. If that's not indicating some control or some ownership of a company that has no employees and no money, it's just one of the many factors that takes you up the flagpole to consider and at the very least creates a fact question. Finally, China Navigation has its own huge, robust fatigue management program, its own. Grand Famous and Baikun had almost nothing. For my opponents who say that often times China Charter is not China Charters don't have expertise. That's what he said. Often times, China Charters don't have expertise. They're not the experts in the vessel operations. That's why we hire the operators to operate the vessel. Not in this case. China Navigation had its own fleet of vessels. They were experts in vessels. They had their own fatigue management program on their other vessels, a detailed fatigue management program on their other vessels. So, Your Honors, I suggest when you look at the bullet points in our brief that you will conclude and should conclude at the end of the day in addition to the vetting issue that China Navigation set this up. They set it up the way they wanted to set it up so if this happened, they could escape. That's the guts of it. Finally, you ask the question, Judge, is it disputed about fatigue? Did fatigue cause this? It's undisputed in this sense. The deposition testimony and the affidavits and the experts have all opined that it was caused by fatigue. It hasn't been rebutted in their briefs, in these briefs. The only evidence you're going to see in these briefs is the accident that was caused by fatigue. Thank you. Thank you. Thank you.